CITIZENS UNITED RECIPROCAL
EXCHANGE,

    **Plaintiff,**

  **vs.**

JOEL J. MEER, M.D., JOEL MEER,
P.C., and EVALUATION & TESTING
ASSOCIATES, P.C.,

    **Defendants.**

Civ. No. 2:17-cv-2425-KM-JBC

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

  Plaintiff Citizens United Reciprocal Exchange ("CURE"), an insurance reciprocal, alleges that defendants Joel Meer, Joel Meer, P.C., and Evaluation and Testing Associates, P.C. submitted, and caused to be submitted, hundreds of fraudulent claims. CURE seeks to recover $144,000.00 that it paid to defendants and seeks a declaratory judgment that it does not have to pay defendants' pending claims, which are alleged to be in excess of $16,100.00. CURE asserts eight counts, including for unjust enrichment, common law fraud, violations of the Racketeer Influenced and Corrupt Organizations Act, and violations of the New Jersey Insurance Fraud Prevention Act.

## I.    BACKGROUND[1]

Plaintiff Citizens United Reciprocal Exchange ("CURE") is an insurance reciprocal authorized to conduct business and issue automobile insurance policies in New Jersey. (Compl. ¶ 9). Defendant Joel Meer ("Meer") resides in New Jersey. (Compl. ¶ 10). Defendant Joel Meer, P.C. ("Meer, P.C.") is a medical professional corporation incorporated in New Jersey with its principal place of business in New Jersey. (Compl. ¶ 11). Defendant Evaluation & Testing Associates, P.C. ("ETA") is a medical professional corporation incorporated in New Jersey with its principal place of business in New Jersey. (Compl. ¶ 12). ETA was a New Jersey general business corporation from June 22, 2011 to March 1, 2013. (Compl ¶ 13). Meer owns both Meer, P.C. and ETA. (Compl. ¶¶ 10-12).

Under New Jersey law, automobile insurance policies provide benefits for personal injuries sustained in an accident involving the covered automobile, regardless of whether the driver was at fault for the accident. (Compl. ¶¶ 23-24). This coverage is called "personal injury protection," or "PIP." (Compl. ¶¶ 23-24). When insureds receive treatment, they can assign their right to PIP benefits to medical providers, who can then seek reimbursement from the insurance companies. (Compl. ¶¶ 24). Defendants are such medical providers, *i.e.,* assignees of their patients' PIP benefits.

CURE alleges that defendants Meer, Meer, P.C., and ETA submitted, and caused to be submitted, hundreds of fraudulent no-fault insurance charges for services, including medically unnecessary, illusory, or otherwise non-reimbursable examinations, electrodiagnostic testing, and physical therapy. (Compl. ¶ 1). These services were claimed to have been provided to

---

[1]    The facts are stated with inferences drawn in favor of the plaintiff on this motion to dismiss. *See* Section II, *infra.* Citations to the record are abbreviated as follows:

"Compl." =    Complaint (ECF No. 1)

"Def. Br." =    Brief in Support of Defendants' Motion to Dismiss the Complaint or, Alternatively, Stay the Action (ECF No. 10-1)

Insureds involved in automobile accidents who were eligible for coverage under no-fault insurance policies issued by CURE. (Compl. ¶ 2).

CURE alleges that its payments to defendants were fraudulently obtained for several reasons. First, defendants allegedly billed for medically unnecessary treatments or treatments that did not occur. (Compl. ¶ 3). Extensive services were allegedly provided to Insureds who had only minor accidents. (Compl. ¶¶ 3, 65-70). In those cases, defendants followed pre-determined protocols that invented diagnoses and billed for medically unnecessary treatments to maximize billing. (Compl. ¶¶ 65-132). In many cases the billing codes for services misrepresented and exaggerated the level of service provided. (Compl. ¶ 3).

Second, defendants were allegedly not in compliance with the relevant New Jersey laws and regulations and therefore were not eligible to receive no-fault insurance reimbursements at all. (Compl. ¶ 3). ETA engaged in the practice of medicine while it was a non-professional general business corporation; in New Jersey, only professional medical corporations can engage in the practice of medicine. (Compl. ¶¶ 34-36).

Third, although New Jersey prohibits the practice, defendants allegedly gave patient referrals to chiropractors and chiropractic professional corporations (the "Chiropractic Referral Sources") in exchange for "return referrals." (Compl. ¶¶ 80-104).

CURE seeks to recover more than $144,000.00 that it paid in reliance on defendants' allegedly fraudulent billing. (Compl. ¶ 8). CURE also seeks a declaratory judgment that it does not have to pay defendants' pending claims, which are alleged to be in excess of $16,100.00. (Compl. ¶ 3).

CURE asserts eight causes of action against defendants:

- Count 1 seeks a declaratory judgment that Meer, P.C. and ETA have no right to receive payment for any pending bills submitted to CURE. (Compl. ¶¶ 322-29)

- Count 2 alleges, against all defendants, violations of the New Jersey Insurance Fraud Prevention Act ("NJIFPA"), N.J. Stat. § 17:33A-1, *et seq.* (Compl. ¶¶ 330-32)
- Count 3 alleges, against Meer, a violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) (Compl. ¶¶ 333-40)
- Count 4 alleges, against Meer and Meer, P.C., common law fraud (Compl. ¶¶ 341-47)
- Count 5 alleges, against Meer and Meer, P.C., unjust enrichment (Compl. ¶¶ 348-53)
- Count 6 alleges, against Meer and ETA, a violation of RICO, 18 U.S.C. ¶ 1962(c) (Compl. ¶¶ 354-61)
- Count 7 alleges, against Meer and ETA, common law fraud (Compl. ¶¶ 362-68)
- Count 8 alleges, against Meer and ETA, unjust enrichment (Compl. ¶¶ 369-74)

In response to CURE's allegations, defendants have moved to dismiss the complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6), as well as for lack of particularity pursuant to Rule 9(b). (ECF No. 10). Plaintiffs oppose this motion to dismiss. (ECF No. 13).

## II.    LEGAL STANDARDS

### A. Rule 12(b)(1)

Motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) may be raised at any time. *Iwanowa v. Ford Motor Co.,* 67 F. Supp. 2d 424, 437-38 (D.N.J. 1999). "[B]ecause subject matter jurisdiction is non-waivable, courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 278, 97 S. Ct. 568, 50 L.Ed.2d 471 (1977). A necessary corollary is that the court can raise sua sponte subject-matter jurisdiction concerns." *Nesbit v. Gears Unlimited, Inc.,* 347 F.3d 72, 76–77 (3d Cir. 2003).

Rule 12(b)(1) challenges may be either facial or factual attacks. *See* 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. &*

*Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa*, 67 F. Supp. 2d at 438. A court considering such a facial challenge assumes that the allegations in the complaint are true. *Cardio-Med. Assoc., Ltd. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa*, 67 F. Supp. 2d at 438. A factual attack, on the other hand, permits the Court to consider evidence extrinsic to the pleadings. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000), *holding modified on other grounds by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003). Thus "Rule 12(b)(1) does not provide plaintiffs the procedural safeguards of Rule 12(b)(6), such as assuming the truth of the plaintiff's allegations." *CNA v. United States*, 535 F.3d 132, 144 (3d Cir. 2008).

> The burden of establishing federal jurisdiction rests with the party asserting its existence. [citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n. 3 (2006).] "Challenges to subject matter jurisdiction under Rule 12(b)(1) may be facial or factual." [citing *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (quoting *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006)).] A facial attack "concerns 'an alleged pleading deficiency' whereas a factual attack concerns 'the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" [citing *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (alterations in original) (quoting *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir.2007)).]

> "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." [citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).] By contrast, in reviewing a factual attack, "the court must permit the plaintiff to respond with rebuttal evidence in support of jurisdiction, and the court then decides the jurisdictional issue by weighing the evidence. If there is a dispute of a material fact, the court must conduct a plenary hearing on the contested issues prior to determining jurisdiction." [citing *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 290 (3d Cir. 2006) (citations omitted).]

*Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (footnotes omitted; case citations originally in footnotes are inserted in text).

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trs. Thereof v. Tishman Constr. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

### C. Rule 9(b)

For claims of fraud, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement, over and above that of Rule 8(a). Specifically, it requires that "[i]n alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind," however, "may be alleged generally." *Id.* That heightened pleading standard requires the plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (internal quotation and citation omitted).

In general, "[t]o satisfy this heightened standard, the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.* "Plaintiff must also allege who made the misrepresentation to whom and the general content of the misrepresentation." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004) (internal citation omitted); *see also In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) ("Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of fraud with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." (internal quotation and citation omitted)).

> [Plaintiffs] need not, however, plead the "date, place or time" of the fraud, so long as they use an "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." The purpose of Rule 9(b) is to provide notice of the "precise misconduct" with which defendants are charged and to prevent false or unsubstantiated charges. Courts should, however, apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants.

*Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998) (quoting *Seville Indus. Mach. v. Southmost Mach.*, 742 F.2d 786, 791 (3d Cir. 1984) and citing *Christidis v. First Pa. Mortg. Trust*, 717 F.2d 96, 99 (3d Cir. 1983)).

## III.  DISCUSSION

Defendants argue that **(A)** the pending claims must be arbitrated; **(B)** issue and claim preclusion bars this action; **(C)** CURE's fraud claims fail for lack of specificity pursuant to Rule 9(b); **(D)** CURE's claims are barred by waiver and equitable estoppel; **(E)** CURE failed to adequately plead a RICO claim; and **(F)** CURE's claims are time barred.

Defendants argue in the alternative that this court should stay the action pending the appeal of *GEICO v. Tri-County Neurology & Rehab., LLC*, No. 14-cv-8071, 2015 WL 7871166 (D.N.J. Dec. 4, 2015), *rev'd on reconsideration* 2016 WL 4149954 (D.N.J. Aug. 2, 2016) ("*Tri County II*"). The Third Circuit has since decided *Tri County II*, which renders defendants' motion for a stay moot and provides guidance regarding Count 1. *See GEICO v. Tri County Neurology & Rehab. LLC*, ___ F. App'x ___, 2018 WL 345046 (3d Cir. Jan. 10, 2018).

### A. Arbitration and Declaratory Judgment

Count 1 seeks a declaratory judgment that Meer, P.C. and ETA have no right to receive payment for any pending bills submitted to CURE. (Compl. ¶¶ 322-29). Per the Third Circuit's decision in *Tri County II*, CURE cannot use the declaratory judgment device in this circumstance. *See* 2018 WL 345046, at *2-3.

In *Tri County II*, GEICO sought a declaratory judgment that it was not obligated to pay $2,211,000.00 in allegedly fraudulent PIP claims submitted by Tri County. *Id.* The Declaratory Judgment Act confers on federal courts the power to declare the rights of litigants. *See* 28 U.S.C. § 2201(a) (providing that the Court "may declare the rights and other legal relations of any interested party seeking such declaration"). However, mandatory arbitration provisions can limit the availability of declaratory relief. That is the case here.

The Third Circuit held in *Tri County II* that GEICO could not seek a similar declaratory judgment. *Id.* "In New Jersey, disputes between medical providers and insurance companies over the payment of PIP claims must be resolved through a statutorily mandated arbitration process." *Id.*; *see also*

*GEICO v. MLS Med. Grp.*, No. 12-7281, 2013 WL 6384652, at *5 (D.N.J. Dec. 6, 2013) (declining to exercise its power to adjudicate a declaratory judgment action regarding PIP claims). The New Jersey Automobile Insurance Cost Reduction Act provides that:

> Any dispute regarding the recovery of medical expense benefits or other benefits provided under personal injury protection coverage … arising out of the operation, ownership, maintenance or use of an automobile may be submitted to dispute resolution on the initiative of any party to the dispute, as hereinafter provided.

N.J. Stat. Ann. § 39:6A-5.1(a). The statue defines "[d]isputes involving medical expense benefits" to include "whether the disputed medical treatment was actually performed," "the necessity or appropriateness of consultations by other health care providers," and "whether the treatment performed is reasonable, necessary, and compatible with the protocols provided." N.J. Stat. Ann. § 39:6A-5.1(c).

New Jersey courts have held that the statute mandating PIP arbitration claims must be read "as broadly as the words themselves indicate" and that "arbitrators are authorized to determine both factual and legal issues," including whether a medical provider's claims should be "disqualified for fraud." *State Farm Ins. Co. v. Sabato*, 767 A.2d 485, 486-87 (N.J. Super. Ct. App. Div. 2001) (citing *State Farm Mut. Auto. Ins. Co. v. Molino*, 674 A2d 189, 191 (1996)).

Therefore, this court cannot enter a declaratory judgment stating that CURE may withhold payment on allegedly fraudulent PIP claims. This dispute falls under New Jersey's PIP arbitration statute. Defendants have a statutory right to compel arbitration to resolve this dispute. CURE's Count 1 thus fails to state a claim and is dismissed under Federal Rule of Civil Procedure 12(b)(6).[2]

---

[2]  In *Allstate Insurance Co. v. Lopez*, the New Jersey Superior Court, Law Division, permitted a declaratory judgment action regarding PIP claims. 710 A.2d 1072, 1081-82 (N.J. Super. Ct. Law Div. 1998). However, in *State Farm Insurance v. Sabato*, the New Jersey Superior Court Appellate Division distinguished *Lopez* on the basis of its having involved "a massive insurance fraud ring" and the court's desire to "avoid

## B. Issue and Claim Preclusion

Issue and claim preclusion are not appropriate in this case. Issue preclusion "prevents parties from relitigating an issue that has already been actually litigated." *Peloro v. United States*, 488 F.3d 163, 174 (3d Cir. 2007). It applies when:

(1) [T]he issue sought to be precluded [is] the same as that involved in the prior action;

(2) that issue [was] actually litigated;

(3) it [was] determined by a final and valid judgment; and

(4) the determination [was] essential to the prior judgment.

*Id.* at 175 (quoting *Burlington N. R.R. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231-32 (3d Cir. 1995)). Claim preclusion "gives dispositive effect to a prior judgment if a particular issue, although not litigated, *could have been raised* in the earlier proceeding." *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999) (citing *Bd. of Trs. of Trucking Emps. Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992)). It requires:

(1) [A] final judgment on the merits in a prior suit involving;

(2) the same parties or their privities; and

(3) a subsequent suit based on the same cause of action.

*Id.* (citing *Centra*, 983 F.2d at 504).

Defendants have the burden to establish issue and claim preclusion. *See Greenway Ctr., Inc. v. Essex Ins. Co.*, 475 F.3d 139, 147 (3d Cir. 2007) ("The party asserting issue preclusion ... bear[s] the burden of proving its applicability to the case at hand."); *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144,

---

the unmanageable spectacle of innumerable individual arbitration proceedings" regarding over four hundred defendants. 767 A.2d 485, 487 (N.J. Super. Ct. App. Div. 2001). *Sabato* also noted that the Appellate Division's decision in *Molino*, holding that PIP claims are subject to binding arbitration, must control over the Law Division's decision in *Lopez*. *Id.*; *see State Farm Auto. Ins. Co. v. Molino*, 674 A.2d 189 (N.J. Super. Ct. App. Div. 1996).

The Third Circuit's *Tri County II* decision, too, suggests that *Lopez*'s holding is limited to circumstances with a large number of parties and significant case management complexities. 2018 WL 345046, at *3 n.4. For these reasons, I find *Lopez* inapplicable here.

158 (3d Cir. 2001) ("The party seeking to take advantage of claim preclusion has the burden of establishing it."). The defendants have not met that burden.

Defendants have not proven which claims were arbitrated. They have not introduced an arbitrator's findings regarding the fraud alleged here. For instance, it is unclear whether arbitrators found an alleged kickback scheme or fraudulent claims. Moreover, defendants have not established that the plaintiffs' claims could have been brought in the arbitration matter. *See GEICO v. MLS Med. Grp.*, 2013 WL 6384652 at *7 (finding that defendants have not met their burden to prove issue or claim preclusion regarding PIP arbitration).

Based on this record, I cannot say that the issues here are the same ones raised in arbitration, that the issue was actually litigated and determined by a final valid judgment on the merits, or that the determination was essential to the prior judgment. Defendants' motion to dismiss based on *res judicata* is therefore denied.

### C. Pleading Fraud under Rule 9(b)
#### i. Common Law Fraud

In Counts 4 and 7, CURE asserts common law fraud claims against defendants. (Compl. ¶¶ 341-47, 362-68). Under New Jersey law, the five elements of common law fraud are: "**(1)** a material misrepresentation of a presently existing or past fact; **(2)** knowledge or belief by the defendant of its falsity; **(3)** an intention that the other person rely on it; **(4)** reasonable reliance thereon by the other person; and **(5)** resulting damages." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997); *see Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007); *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 546 (D.N.J. 2013). Silence can support a claim of common law fraud in circumstances where there is a duty to disclose. *Perri v. Prestigious Homes, Inc.*, No. L-4169-08, 2012 WL 95564, at *5 (N.J. Super. Ct. App. Div. Jan. 13, 2012); *see also Stockroom*, 941 F. Supp. 2d at 546; *Weintraub v. Krobatsch*, 317 A.2d 68, 74-75 (N.J. 1974).

Defendants argue that CURE fails to plead fraud with particularity under Rule 9(b). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200. "[A] party must plead [its] claim with enough particularity to place defendants on notice of the 'precise misconduct with which they are charged.'" *United States ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 502 (3d Cir. 2017).

CURE alleges three main theories of common law fraud. First, CURE alleges that defendants submitted false claims—i.e., billed for services that were not actually provided, followed pre-determined protocols designed to maximize billing, and billed for medically unnecessary treatments. Second, CURE claims that defendants were not in compliance with relevant New Jersey laws and regulations (i.e., ETA engaged in the practice of medicine while it was a non-professional business corporation) and thus submitted PIP claims when it was not eligible to receive reimbursements. Third, CURE alleges that defendants gave patient referrals to chiropractors and chiropractic professional corporations in exchange for "return referrals," which is a prohibited practice in New Jersey. I will refer to these as the "false claims," "noncompliance," and "kickback" theories, respectively.

CURE has adequately pled common law fraud regarding the false claims theory. **(1)** CURE has adequately alleged that there have been material misrepresentations in defendants' reimbursement claims. For instance, CURE's complaint specifically identifies multiple, specific PIP reimbursement claims for Insureds with "moderate to high severity" injuries when police reports indicated a low-speed, low-impact collision and no injuries. (Compl. ¶ 123). CURE also found "identical cervical spine range of motion measurements" and "identical pulse and respiration rates" for practically every initial report. (Compl. ¶¶ 174-78, 182-84). CURE plausibly argues that this suggests fraud, because it is statistically close to impossible for defendants to have found identical

deficits and vital signs for virtually every Insured they purported to examine. (Compl. ¶¶ 179-82).[3]

(2) CURE has adequately pled knowledge or belief by the defendant of the falsity of these misrepresentations. CURE alleges that defendant submitted nearly identical claims for virtually every Insured—with identical claims, vital signs, and motor deficits, to the point that it is statistically unlikely to the point of impossibility. It is a reasonable inference, given those facts, that the defendants were knowingly making false claims. It is unreasonable to infer that the defendants unknowingly submitted repeat, copy-and-paste PIP reimbursement claims without knowing they did not correspond to the actual patients' individual symptoms and treatments.

(3) CURE has also shown that defendants had an intention for CURE to rely on the material misrepresentations. This is not controversial. Defendants submitted PIP reimbursements claims to CURE so CURE would disburse money to cover the alleged medical expenses.

CURE has also shown that (4) it reasonably relied on defendants' actions and (5) sustained damages as a result. CURE received and approved the claims, and paid out on them.

CURE's two other theories of common law fraud, the noncompliance and kickback theories, involve a failure to disclose—i.e., that defendants were not eligible to receive PIP reimbursements because ETA was not a professional medical organization and because they were engaged in a prohibited kickback scheme with chiropractors. These theories are not actionable as common law fraud because, in New Jersey, "fraudulent omission claims require that the defendant have had duty to disclose the omitted information." *Majdipour v.*

---

[3]     Defendant counters that CURE's alleged specific instances are repetitive and do not show individual instances of fraud. In truth, CURE's allegations regarding specific PIP claims are repetitive—but repetitive fraud is exactly the type of fraud that CURE is alleging. CURE alleges that defendants followed pre-determined billing protocols designed to maximize reimbursement rates regardless of actual patient symptoms and needs.

*Jaguar Land Rover N. Am., LLC,* No. 12-cv-7849, 2015 WL 1270958, at *8 (D.N.J. Mar. 18, 2015); *see Stockroom,* 941 F. Supp. 2d at 546 (citing New Jersey cases for the proposition that "a fraudulent omission under common law requires a duty to disclose"); *Weintraub v. Krobatsch,* 317 A.2d 68, 74-75 (N.J. 1974); *Green v. Gen. Motors Corp.,* No. A-2831-01T-5, 2003 WL 21730592, at *8 (N.J. Super. Ct. App. Div. July 10, 2003); *United Jersey Bank v. Kensey,* 704 A.2d 38, 43-44 (N.J. Super. Ct. App. Div. 1997).

CURE has not identified a statute providing that defendants had a duty to disclose their noncompliance with New Jersey regulations and laws. Furthermore, CURE does allege a relationship between the parties that would have created such a duty. Under New Jersey law, three general classes of transactions give rise to a duty to disclose: (1) fiduciary relationships such as attorney and client; (2) where, because of the nature of the transaction or the parties' position toward each other, "trust and confidence ... is necessarily implied"; and (3) where contracts or transactions are "intrinsically fiduciary" because of their "essential nature" and thus "necessarily call[] for perfect good faith and full disclosure, without regard to any particular intention of the parties." *Kensey,* 704 A.2d at 44 (citations omitted). The relationship between CURE and defendants does not appear to fall within any of these general classes. Without a plausible allegation of a duty to disclose, CURE's noncompliance and kickback theories are not actionable as common law fraud.

Therefore, CURE has adequately pled a common law fraud claim on the false claims theory. CURE's noncompliance and kickback theories do not state claims for common law fraud.

### ii. New Jersey Insurance Fraud Prevention Act

In Count 2, CURE asserts a claim pursuant to the NJIFPA to recover PIP benefits it paid to defendants, alleging that defendants obtained the benefits through the fraudulent submission of false and misleading claim forms and treatment reports. (Compl. ¶¶ 330-31). A person or practitioner violates the NJIFPA if he or she:

(1) Presents or causes to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy or the "Unsatisfied Claim and Judgment Fund Law," P.L.1952, c. 174 (C.39:6-61 *et seq.*), knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim; or

(2) Prepares or makes any written or oral statement that is intended to be presented to any insurance company, the Unsatisfied Claim and Judgment Fund or any claimant thereof in connection with, or in support of or opposition to any claim for payment or other benefit pursuant to an insurance policy or the "Unsatisfied Claim and Judgment Fund Law," P.L.1952, c. 174 (C.39:6-61 *et seq.*), knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim; or

(3) Conceals or knowingly fails to disclose the occurrence of an event which affects any person's initial or continued right or entitlement to (a) any insurance benefit or payment or (b) the amount of any benefit or payment to which the person is entitled . . . .

N.J. Stat. Ann. § 17:33A-4. The NJIFPA states that an insurance company can bring a private right of action "in any court of competent jurisdiction" to seek compensation for such fraud, including recovery of attorneys' fees. *Id.* § 17:33A-7a. If the defendant has engaged in a pattern of IFPA violations, the insurance company can seek treble damages. *Id.* § 17:33A-7b.

The NJIFPA is not preempted by PIP arbitration rules. NJIFPA provides that "[a]ny insurance company damaged as a result of a violation of any provision of this act may sue therefor *in any court of competent jurisdiction* ...." *Id.* § 17:33A-7a (emphasis added). The New Jersey Superior Court Appellate Division, referring to this provision, stated that "[i]t is clear from this provision that the Legislature did not contemplate that a claim of violation of the Insurance Fraud Prevention Act would be heard by an arbitrator." *Nationwide Mutual Fire Ins. Co. v. Fiouris*, 928 A.2d 154, 156-57 (N.J. Super. Ct. App. Div. 2007); *see also State Farm Mut. Auto Ins. Co. v. Worrell*, No. 91-cv-1953, 1991

WL 133644, at *3 (E.D. Pa. July 17, 1991) (finding that an arbitration panel "is without jurisdiction" to hear an insurer's NJIFPA claims); *see Fed. Ins. Co. v. von Windherburg-Cordeiro*, No. 12-cv-2491, 2012 WL 6761877, at *3-4 (D.N.J. Dec. 31, 2012).

It is true of course that the Federal Arbitration Act ("FAA") establishes a national policy favoring arbitration that can displace state law under some circumstances. *See Southland Corp. v. Keating*, 465 U.S. 1, 10, 18 (1984). The Supreme Court held that in enacting the FAA, Congress "withdrew the power of states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Id.* at 10; *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (finding that the FAA preempts state law prohibiting arbitration of class actions); *Preston v. Ferrer*, 552 U.S. 346 (2008) (finding that the FAA preempts state law referring dispute to administrative agency). However, the FAA's scope is limited in this case by the McCarran-Ferguson Act, under which state laws regulating insurance may not be preempted by federal statutes. 15 U.S.C. § 1012(b). The McCarran-Ferguson Act is designed to protect the interests of individual states in regulating their insurance industries by ensuring that provisions of federal law do not inadvertently preempt state insurance laws. Thus, under section 1012 of that Act, state laws will "reverse preempt" federal laws if: "(1) the state statute was enacted 'for the purpose of regulating the business of insurance,' (2) the federal statute does not 'specifically relate to the business of insurance,' and (3) the federal statute would 'invalidate, impair, or supersede' the state statute." *Suter v. Munich Reinsurance Co.*, 223 F.3d 150, 160 (3d Cir. 2000). In light of these factors, the FAA does not supersede the NJIFPA, but the other way around. The NJIFPA is specific to insurance; the FAA is not; and applying the FAA in this case would "invalidate, impair, or supersede" the NJIFPA. *See Fed. Ins. Co.*, 2012 WL 6761877, at *4. "Reverse preemption" under the McCarren-Ferguson Act therefore applies, and CURE may litigate its NJIFPA claims in court, notwithstanding the FAA.

CURE's false claims, noncompliance, and kickback theories are all actionable under the NJIFPA. The NJIFPA sweeps more broadly than common law fraud and explicitly reaches certain omissions. It prohibits the submission of insurance reimbursement claims when a party knows that the claim contains false or misleading information concerning any fact or thing material to the claim, and prohibits concealment or knowing failure to disclose an event that affects the eligibility for reimbursement or the amount of the reimbursement. N.J. Stat. Ann. § 17:33A-4.

> Unlike common law fraud, proof of fraud under the IFPA does not require proof of reliance on the false statement or resultant damages, nor proof of intent to deceive. The New Jersey Supreme Court has also held that we must construe the [IFPA]'s provisions liberally to accomplish the Legislature's broad remedial goals.

*Lincoln Nat'l Life Ins. Co. v. Schwarz*, No. 9-cv-3361, 2010 WL 3283550, at *16 (D.N.J. Aug. 18, 2010) (internal citations and quotation marks omitted); *see Liberty Mut. Ins. Co. v. Land*, 892 A.2d 1240, 1246-47 (N.J. 2006); *State v. Nasir*, 809 A.2d 796, 802-03 (N.J. Super. Ct. App. Div. 2002).

Defendants' motion to dismiss the NJIFPA claim is denied.

### D. Waiver and Estoppel

Defendants claim that, even if there was fraud, CURE is barred from asserting such a claim by the doctrines of waiver and equitable estoppel. Defendants allege that CURE would have known about such a massive fraud scheme for a long time and that defendants detrimentally relied on CURE's apparent signaling that it would not contest their PIP claims. (Def. Br. 21). Essentially, defendants argue, if plaintiff's allegations are true, "[d]efendants' 'scheme' was so massive in both duration and scope it was impossible to miss.... [T]he suggestion that CURE was somehow 'duped' is unfathomable." (Def. Br. 21). This argument wins points for audacity, but is unavailing.

Waiver is any "intentional relinquishment of a known right." *Nye v. Ingersoll Rand Co.*, 783 F. Supp. 2d 751, 762 (D.N.J. 2011) (quoting *West Jersey Title & Guar. Co. v. Indus. Tr. Co.*, 141 A.2d 782, 786 (N.J. 1958)). To be

effective, a waiver "must be voluntary and there must be a clear showing the intent to waive the right." *Id.* (citing *West Jersey*, 141 A.2d at 786). Furthermore, "waiver presupposes a full knowledge of the right and an intentional surrender; waiver cannot be predicated on consent given under a mistake of fact." *Id.* (quoting *Cty. of Morris v. Fauver*, 707 A.2d 958, 970 (N.J. 1998)). Defendants have not demonstrated that CURE "waived" its right to sue defendants. They do not show that CURE made a voluntary or clear relinquishment of the right to sue.

To establish equitable estoppel, a party must show "(1) a representation or misrepresentation, (2) made with knowledge by the representor that it would induce action, and (3) a detrimental reliance on the representation by the claimant." *La. Counseling & Family Servs., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 367 (D.N.J. 2008). Defendants allege that CURE paid claims to defendants despite allegedly "impossible to miss" fraud; this, in turn, caused defendants to detrimentally rely on CURE's apparent acceptance of fraud. This does not constitute a showing of equitable estoppel. Defendants do not show that CURE made a representation or misrepresentation that CURE knew defendants would detrimentally rely on. CURE's claims will not be dismissed on the grounds of waiver or equitable estoppel.

### E. Federal RICO

CURE alleges that defendants' alleged conduct violates section 1962(c) of the federal RICO statute, which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which effect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c)); *see In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362-63 (3d Cir. 2010). To establish a claim under section 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 482-83 (1985); *see also District 1199P Health &*

*Welfare Plan v. Janssen, L.P.*, 784 F.Supp.2d 508, 518-19 (D.N.J. 2011) (citation omitted).

The term "enterprise" includes "'any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" *Ins. Brokerage*, 618 F.3d at 362-63 (citing 18 U.S.C. § 1961(4)). With respect to the pattern of racketeering activity, the statute "requires at least two acts of racketeering activity within a ten-year period," which may include federal mail fraud under 18 U.S.C. § 1341. *Id.* (citations omitted). In addition, "the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima*, 473 U.S. at 496.

Defendants argue that CURE fails to state a claim for RICO violations and the RICO allegations are not sufficiently particularized. These arguments fail. First, CURE alleges facts supporting predicate acts of racketeering—i.e., mail fraud in the submission of knowingly false PIP claims. Second, CURE has pled their RICO claims with the requisite specificity. CURE asserts its RICO claim in relation to its false claims and noncompliance theories of fraud. (Compl. ¶¶ 354-47). The purpose of the heightened pleading standard is to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (internal citation and quotation marks omitted). CURE provides numerous specific examples of allegedly fraudulent conduct, including multiple, specified PIP reimbursement claims for Insureds with "moderate to high severity" injuries when police reports indicated low-speed, low-impact collisions and no injuries. (Compl. ¶ 123). CURE also alleges that defendants submitted claims with identical defects and vital signs for virtually every Insured, suggesting that defendants knowingly submitted false reports. (Compl. ¶¶ 174-84). CURE has also alleged that ETA submitted bills while it was a non-professional general business organization and thus ineligible to engage in the practice of medicine

in New Jersey. (Compl. ¶¶ 34-36). CURE has identified specific PIP claims that allegedly constitute mail fraud, the predicate act alleged under RICO. And the frauds are alleged to have been both interrelated and continuous since at least 2009. *See H.J. Inc. v. Nw. Bell Telephone Co.*, 492 U.S. 229 (1989) (addressing the requirements for a "pattern of racketeering activity," including continuity and predicate acts); *see also Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406 (3d Cir. 1991). These allegations put defendants sufficiently on notice of the activities with which they are accused.

Many courts have permitted RICO claims under similar facts. For example, in *GEICO v. Korn*, this court permitted a RICO claim alleging mail fraud involving false insurance reimbursement claims. 310 F.R.D. 125, 129-31 (D.N.J. 2015). The plaintiffs in that case alleged that defendants exaggerated the severity of patients' injuries, overstated the amount of time doctors spent with patients, stated that "comprehensive" and "detailed" patient histories were taken when they were not, stated that "comprehensive" and "detailed" examinations were performed when they were not, and overstated the complexity of medical decision making. *Id.*; *see also, e.g., State Farm Mutual Auto. Ins. Co. v. Radden*, No. 14-cv-13299, 2015 WL 631965, at *2 (E.D. Mich. Feb. 13, 2015) ("State Farm sufficiently states a substantive racketeering claim under RICO.... [T]he complaint describes a scheme involving a scheme involving nearly 700 acts of mail fraud involving a like number of fraudulent claims that occurred over a three year period."); *GEICO v. Gateva*, No. 12-cv-4236, 2014 WL 1330846, at *9 (E.D.N.Y. Mar. 10, 2014) (finding a RICO violations where "[p]laintiffs allege that [defendant] agreed to conduct or participate in the conduct of the RICO enterprises' affairs through a pattern of ongoing activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, by submitting or causing to be submitted numerous fraudulent bills seeking payment from GEICO"); *GEICO v. Esses*, No. 12-cv-4424, 2013 WL 5972481, at *7 (E.D.N.Y. Sept. 27, 2013) ("The defendants' numerous mailings of fraudulent insurance claims to [defendant]

in connection with the schemes thus constitute the predicate acts of racketeering activity that establish violation of a [RICO].").  CURE has alleged mail fraud with similar facts to *GEICO v. Korn*, and has pled fraud with specificity. Therefore, defendants' motion to dismiss CURE's federal RICO claim is denied.

### F. Time Bar

I will deny the motion to dismiss CURE's claims as untimely under the applicable statutes of limitations. A civil action under RICO is subject to a four-year statute of limitations that follows the injury-discovery rule of accrual. *See Forbes v. Eagleson*, 228 F.3d 471, 483-84 (3d Cir. 2000).[4] The NJIFPA is subject to a six-year statute of limitations. N.J. Stat. Ann § 17:33A-7(e). Common law fraud and unjust enrichment are also subject to a six-year statute of limitations in New Jersey. N.J. Stat. Ann § 2A:14-1; *see Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1205 (N.J. 2000) (six-year statute of limitations for common law fraud in New Jersey); *see also Spellman v. Express Dynamics, LLC*, 150 F. Supp. 3d 378, 391 (D.N.J. 2015) (six-year statute of limitations for unjust enrichment in New Jersey).

I assume without deciding that certain of the acts pled fall outside the applicable limitations periods. Nevertheless, further discovery and fact finding would be necessary, for example to determine whether equitable tolling would save any arguably untimely claims. To benefit from the equitable tolling doctrine, the plaintiff must show that "(1) the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of her claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts." *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 509 (3d Cir. 2006); *see In re Cmty. Bank of N. Va.*, 622 F.3d 275, 301-02 (3d Cir. 2010)

---

[4]     *See also Rotella v. Wood*, 528 U.S. 549, 553-54 & n.2 (2000) (declining to "settle upon a final rule," but noting that the injury-discovery rule and the injury-occurrence rule may apply to the civil RICO statute of limitations); *Prudential Ins. Co. of Am. v. U.S. Gypsum Co.*, 359 F.3d 226, 233 (3d Cir. 2004).

("[W]hether a particular party is eligible for equitable tolling generally requires consideration of evidence beyond the pleadings[. Thus ...] tolling is not generally amenable to resolution on a Rule 12(b)(6) motion.").

CURE's allegations plausibly suggest that defendants concealed facts that would have enabled CURE to discover the alleged fraud. Assuming as I must that those allegations are true, the limitations periods governing CURE's claims may be equitably tolled. Denial of this motion to dismiss on statute-of-limitations grounds, however, is without prejudice to reassertion of the issue after appropriate discovery and factual development.

## IV.    CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part. Count 1 is dismissed with prejudice because it is barred as a matter of law. Counts 4 and 7 are dismissed regarding the noncompliance and kickback theories of common law fraud only; the false claims theory remains a viable basis for Counts 4 and 7. Defendants' motion to dismiss is otherwise denied. Defendants' motion to stay the case pending the appeal of *Tri County II* has become moot and is therefore denied.

An appropriate order accompanies this opinion.


Dated: February 28, 2018



**KEVIN MCNULTY**
**United States District Judge**